NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Sudha BANSAL, | |
|     Petitioner, | |
| v. | Civ. No. 11-1287 |
| Aruna CHAKRALA; DR. ARUNA CHAKRALA MD, P.C. | OPINION & ORDER |
|     Respondents, | |
| and | |
| PLAINSBORO-PRINCETON MEDICAL CENTER, | |
|     Third Party Respondent. | |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter comes before the Court upon Petitioner Sudha Bansal's Motion to Confirm Arbitration Award [docket # 2] and upon the Cross-motion to Dismiss [6] filed by Respondents Aruna Chakrala and Dr. Aruna Chakrala MD, P.C. ("Chakrala P.C.") and by third party respondent Plainsboro-Princeton Medical Associates, P.C.[1] ("PPMA") (collectively, "Respondents"). The Court has decided the matter after considering the parties' submissions and after holding oral argument on May 20, 2011. For the reasons stated below, Respondents' cross-motion to dismiss is granted, and Petitioner's motion is denied as moot.

---

[1] This party is incorrectly named in the Petition as Plainsboro-Princeton Medical Center. (Letter from Jae H. Cho 1) [3].

1

II.  BACKGROUND

This is a case about two medical doctors who entered into a partnership agreement and later had a falling out.  They submitted their dispute to arbitration as required by the agreement and came away with a final arbitration award.  Now, Petitioner Dr. Sudha Bansal wants the Court to confirm part of that award, modify a second part, and vacate a third.  Respondents Aruna Chakrala and Dr. Aruna Chakrala MD, P.C. ("Chakrala P.C.") and third party respondent Plainsboro-Princeton Medical Associates, P.C. ("PPMA") oppose the request and also move to dismiss the Petition on various grounds, including lack of subject matter jurisdiction.

**A.  Formation and Termination of the Partnership**

In 2006, Dr. Bansal and Dr. Chakrala signed a Partnership Agreement establishing a joint medical practice in Plainsboro, New Jersey.  (Pet. to Confirm Arbitration Award ("Pet."), Ex. A., Partnership Agreement 1) [1-2].  The Agreement was for a two-year period and would renew automatically unless one party notified the other that it was withdrawing.  (Pet. ¶ 15).  To create the partnership, Bansal resigned from a position as a staff physician at a nearby hospital and became a 50% shareholder in Chakrala's medical practice, Chakrala P.C.[2]  (*Id.* at ¶ 10.)  The Agreement contained a restrictive covenant requiring the parties to "not open or start any business of the same nature . . . in the Township of Plainsboro, for a period of 2 years from the date of dissolution of the Partnership."  (*Id.* at ¶ 12 (quoting Partnership Agreement 5).)  The Agreement also provided that any disputes related to the agreement would be submitted to binding arbitration.  (*Id.* at ¶ 16 (citing Partnership Agreement 11).)

Bansal began practicing at Chakrala P.C. in September of 2006.  (*Id.* at ¶ 17.)  Under the agreement, the doctors worked a rotating work schedule, alternating three months of work and

---

[2] Bansal was not required to pay a buy-in, but she was also not entitled to a buy-out: her 50% interest would revert back to Chakrala "when and if [Bansal] terminate[d] or withdr[ew]."  (Pet. at ¶ 13 (quoting Partnership Agreement 7).)  But if Chakrala terminated the partnership after the initial two years, Chakrala would receive "the book value of the assets in service on the 'commencement date.'" (*Id.* at ¶ 14 (quoting Partnership Agreement 8).)

three months off.  (*Id.* at ¶ 11.)  The arrangement worked for over a year and a half, but on May 7, 2008, Chakrala sent a letter informing Bansal that she was terminating the agreement because Bansal had breached the contract by providing services to another physician and by "not significantly add[ing] to the growth" of the practice.  (*Id.* at ¶ 18.)

### B. Arbitration

Bansal filed a lawsuit seeking to enjoin Chakrala from terminating the agreement, but the court compelled the parties to arbitrate the dispute instead.  (*Id.* at ¶ 19.)  The parties began arbitration in early 2010.  During arbitration, Chakrala dissolved Chakrala P.C. and formed a new company, PPMA.  (*Id.* at ¶ 21.)  On September 22, 2010, the arbitrator issued a "Partial Final Award" in favor of Bansal.  (*Id.* at ¶ 22.)  Relying on an expert report, the arbitrator found that Bansal had contributed to the growth of the practice, that Chakrala had benefited from Bansal's contribution, and that Chakrala had breached the agreement in numerous ways that injured Bansal.  (*Id.* at ¶¶ 22–25.)  The arbitrator further concluded that "the precise value of [Bansal's] loss cannot be determined sufficiently to make an award on the basis of the [expert] report."  (*Id.* at ¶ 28 (quoting Pet. Ex. B, Partial Final Agreement ¶ 71).)  Nevertheless, the arbitrator awarded $12,297 to Bansal based on one of Chakrala's breaches—failure to form a limited liability company—and $100 in nominal damages for the breaches whose value could not be determined.  (*Id.* at ¶ 29.)  However, the arbitrator decided not to issue the award against Chakrala P.C. because that entity had been dissolved and the new entity—PPMA—was not a party to the arbitration proceedings.  (*Id.* at ¶ 27 (citing Pet. Ex. B, Partial Final Agreement ¶ 65.)  Finally, the arbitrator declined to grant Bansal's requests for injunctive relief, which the arbitrator characterized as a "two-phase injunction": (1) Bansal would be put back into the medical practice for a time so that she could become reacquainted with her old patients, and (2) both parties would be required to leave the Plainsboro office and set up new offices outside of

Plainsboro. (Pet. Ex. B, Partial Final Agreement ¶ 58.) These requests were "unworkable and inequitable," the arbitrator found. (*Id*. at ¶ 59.) On December 8, 2010, the arbitrator rendered its "Final Award": the arbitrator confirmed the award of $12,297 for one breach and $100 in nominal damages for the others, awarded $45,000 in attorney's fees to Bansal, and assigned Bansal's $24,188.40 share of the administrative fees for arbitration to Chakrala. (Pet. at ¶ 30.)

### C. The Present Lawsuit

On March 7, 2011, Petitioner Bansal initiated the present lawsuit by filing a motion to confirm in part, modify in part, and vacate in part the arbitration award. Specifically, Petitioner asks us to: (1) modify the $100 nominal damage award, replacing it with an amount based on the actual damages Petitioner suffered; (2) grant Petitioner's request for injunctive relief and vacate the portion of the arbitration award denying that relief; and (3) confirm all other aspects of the award.

Respondents oppose the Petition. Respondents also cross-move to dismiss the case, arguing: (1) the Court lacks subject matter jurisdiction because the parties are not, in fact, citizens of different states and the amount in controversy does not exceed $75,000; (2) Petitioner incorrectly named the Plainsboro-Princeton Medical Center as a "third-party respondent;" and (3) Petitioner failed to list her address in the Petition as required by the Local Rules. Because we find, as discussed below, that there is no diversity of citizenship, we need not consider Respondents' other arguments.

## III. ANALYSIS OF SUBJECT MATTER JURISDICTION

Respondents contend that this Court does not have federal diversity jurisdiction over the action because, to the best of their knowledge, all parties are citizens of New Jersey and the

4

amount in question is less than $75,000.[3] (Resp'ts' Br. in Supp. of Cross-Mot. 6) [6-1]. Petitioner concedes that she was a resident of New Jersey, but argues that she became a citizen of Pennsylvania shortly before filing the petition, and her citizenship is therefore diverse from that of the New Jersey respondents. (Pet'r's Br. in Opp'n to Cross-Mot. 2) [9].

To support her claim of Pennsylvania citizenship, Petitioner submits a certification explaining in detail the circumstances surrounding her establishment of citizenship in Pennsylvania, which she says she completed on March 3, 2011—four days before filing the Petition. Petitioner states that she applied for a job at Nazareth Hospital in Philadelphia, Pennsylvania, in November 2010 and was offered a position in January 2011 to begin work in March. (Bansal Certification, ¶¶ 4–9) [9-2]. Petitioner signed a lease for an apartment in Philadelphia on March 3 and began work on March 7, the same day she filed her Petition. (*Id*. at ¶ 11.) Although she says she moved her personal belongings to the apartment on March 3, (*id*.), it does not appear that she ever actually took up residence in the Philadelphia apartment. Rather, it appears that, despite obtaining an apartment and beginning work, Petitioner continued to "commute from New Jersey to Nazareth Hospital" for several weeks. (*Id.* at ¶ 20.) Petitioner claims that she did this because her daughter became seriously ill on March 4, spent several days in the hospital, and then was confined to home-schooling from March 14 to March 25. (*Id*. at ¶¶ 12–19.) Once her daughter returned to school, Petitioner continued doing the things ancillary to switching residences—such as opening a bank account, registering for a driver's license, and obtaining car insurance. (*Id.* at ¶¶ 22–25.) However, Petitioner never states exactly when she began living in the Philadelphia apartment. In fact, her certification dated April 10—over a month after the lawsuit began—states that she "was not able to complete [her] move" after

---

[3] Respondents add that there is no federal question jurisdiction in this case. They are correct: although this case concerns an arbitration award rendered pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*., "the Arbitration Act does not supply federal jurisdiction where it does not otherwise exist." *Virgin Islands Hous. Auth. v. Coastal Gen. Const. Servs. Corp.*, 27 F.3d 911, 915 (3d Cir. 1994). Petitioner does not appear to dispute this.

leasing the apartment and is "presently . . . in the process of completing" the move. (*Id*. at ¶ 25.) Her husband and daughter continue to live in New Jersey, but Petitioner claims they will move to Pennsylvania with her once she can find a suitable home for the family. (*Id*. at ¶ 27.) She concedes that the apartment is "temporary." (*Id* at ¶ 26.)

Petitioner argues that she established her new Pennsylvania citizenship when she obtained the apartment on March 3 and that her brief period of commuting was not a continuation of her New Jersey citizenship but simply a short time away from her new Pennsylvania residence. (Pet'r's Br. in Opp'n to Cross-Mot. 5) [9]. We disagree. As described below, we find instead that Plaintiff has not produced sufficient evidence to show that, when the complaint was filed, she had taken up residence in Pennsylvania.

1. Legal Standard

Diversity jurisdiction exists where no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1); *McCollum v. State Farm Ins. Co.*, 376 F. App'x 217, 219 (3d Cir. 2010). For purposes of determining diversity jurisdiction, a natural person is deemed to be a citizen of the state where he is domiciled. 28 U.S.C. § 1332(a); *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006). The "domicile" of an individual is his "true, fixed and permanent home and place of habitation. It is the place to which, whenever he is absent, he has the intention of returning." *Vlandis v. Kline*, 412 U.S. 441, 454 (1973). Domicile is determined as of the date the suit is filed. *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 571 (2004); *Mollan v. Torrance*, 22 U.S. 537, 539 (1824) ("[J]urisdiction of the court depends upon the state of things at the time of the action brought, and . . . after vesting, it cannot be ousted by subsequent events."). Courts consider several factors in determining an individual's domicile, including "exercise of political rights, payment of personal taxes, house of residence, and place of business." *Krasnov v. Dinan*,

465 F.2d 1298, 1301 (3d Cir. 1972) (quotations omitted). Other factors include "location of brokerage and bank accounts, location of spouse and family, membership in unions and other organizations, and driver's license and vehicle registration." *McCann*, 458 F.3d at 286. A person's own testimony about his domicile can be considered, "subject to the infirmity of any self-serving declaration." *Korn v. Korn*, 398 F.2d 689, 691 (3d Cir. 1968). An individual's entire "course of conduct" should be taken into account. *Id.*

An individual can change domicile instantly, but to do so, he must: (1) "take up residence at the new domicile", and (2) "intend to remain there." *McCann*, 458 F.3d at 286. "Neither the physical presence nor the intention to remain is alone sufficient." *Krasnov*, 465 F.2d at 1300. Because an acquired domicile is "presumed to continue until it is shown to have changed," *McCann*, 458 F.3d at 286 (quoting *Mitchell v. United States*, 88 U.S. 350, 353 (1874)), there is a "presumption favoring an established domicile over a new one." *Id.* at 286–87 (citations omitted).

In the Third Circuit, when the party claiming a new domicile is also the party asserting diversity of citizenship, that party carries both the burden of production regarding domicile and the burden of persuasion regarding federal jurisdiction. *Id.* at 289. "[T]he effect of placing both burdens on one party is to require the party to initially carry the burden of production to rebut the presumption in favor of an established domicile. If and when the party does so, the presumption falls out of the case and the party is required to carry the burden of persuasion by proving that a change of domicile occurred, creating diversity of citizenship." *Id*. The appropriate standard of proof is by a preponderance of the evidence. *Id*. at 289.

2. Application

We start with the presumption that Petitioner is still a citizen of New Jersey. To establish jurisdiction, Petitioner must first present enough evidence to rebut the presumption. Then, she

7

must, by a preponderance of the evidence, meet the burden of persuasion that diversity jurisdiction exists. On the evidence before us, she has not carried her burden of production or persuasion.

Proof of a change in domicile requires both residence and intent to remain. Although Petitioner's acceptance of a job in Philadelphia, lease of an apartment, and statements that she intends to move her family to Pennsylvania in the near future suggest that she does intend to live there in the future, she has not carried her burden as to the first element—taking up residence in Pennsylvania. We can only assess the evidence as it stands at the time the Complaint was filed. This means we must disregard her subsequent efforts to establish her new domicile, including her attempts to secure a driver's license and car insurance. On the evidence existing at the time of the Complaint, her only connection to Pennsylvania was that she was scheduled to begin a new job there and that she had signed a lease on an apartment. But despite leasing the apartment and moving some of her belongings in, it appears she never actually began living there.[4] Instead, she concedes that she continued to commute to work from New Jersey due to her daughter's illness, (Bansal Certification ¶ 20) [9-2], that she "was not able to complete [her] move" right away and is "presently . . . in the process of completing" it, (*id*. at ¶ 25), and that the apartment was merely "temporary" until she could find a place for her husband and daughter to live, (*id*. at ¶ 26). We believe that the mere leasing of an additional residence, without actually occupying it, is insufficient to satisfy the residency requirement. *See United States v. Allstate Ins. Co.,* Civ. No. 85-593, 1986 WL 6186, at *3 (D.N.J. May 28, 1986) ("Although a person may have several residences, he may have only one domicile[.]").

---

[4] When asked during oral argument, Counsel for Petitioner stated that he did not know whether Petitioner spent the night in the apartment after transferring her belongings.

Moreover, most of the objective evidence actually bolsters the presumption of New Jersey domicile. At the time of the Complaint, Petitioner had a New Jersey driver's license listing her New Jersey address, owned two motor vehicles registered to her and listing her New Jersey address, and possessed medical licenses in both Pennsylvania and New Jersey listing her New Jersey address. (Bowen Certification ¶ 4) [6-3]; *see McCann*, 458 F.3d at 286 (considering "membership in unions and other organizations, and driver's license and vehicle registration" in determining domicile). The U.S. Postal Service continues to deliver her mail to her New Jersey address. (*Id.*); *see Tachibana v. Colo. Mountain Dev, Inc.*, No. 07-00364, 2007 WL 2916134, at *2 (D. Haw. Oct. 2, 2007) (rejecting plaintiff's claimed change of domicile where plaintiff "continued to receive mail in [state of old domicile], and did not formally register a change of address with the United States Postal Service.") And her family continues to reside in New Jersey. (Bansal Certification ¶ 27) [9-2]; *see McCann*, 458 F.3d at 286 (considering "location of spouse and family" in determining domicile); *Curley v. Mosier*, No. 09-2066, 2010 WL 2607264, at *5 (D.N.J. June 17, 2010) (rejecting plaintiff's claimed change of domicile to Pennsylvania and listing plaintiff's family's continued residence in New Jersey as "substantial" connection to New Jersey). Given the undisputed facts at the time the Complaint was filed, Petitioner has failed to rebut the presumption that she was domiciled in New Jersey when she initiated this action. Therefore, we must dismiss her petition for lack of subject matter jurisdiction.

Finally, we note that Petitioner was afforded ample "opportunity to present facts, either by way of affidavit or in an evidentiary hearing," to show that the claim of diversity jurisdiction is authentic. *See Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d 1320, 1323 (3d Cir. 1972) (quoting *Groh v. Brooks*, 421 F.2d 589, 594 (3d Cir. 1970)). Petitioner submitted a brief and affidavit explaining her claimed change in domicile, supported by numerous exhibits including

9

emails from her new employer and a copy of the lease for the Philadelphia apartment, and had an opportunity to follow up during oral argument. Her inability to establish the change in domicile was due not to a lack of opportunity but to a lack of favorable facts.

## IV. CONCLUSION

For the reasons given above, IT IS on this 31st day of May, 2011,

ORDERED that Respondents' Cross-motion to Dismiss for lack of subject matter jurisdiction [docket # 6] is GRANTED; and it is

ORDERED that Petitioner's Motion to Confirm Arbitration Award [docket # 2] is DENIED as moot; and it is

ORDERED that this case is CLOSED.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.